UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LUCAS MACK, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HEIDI MACK, AND A.M., BY AND THROUGH HER NEXT FRIEND, LUCAS MACK,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 1:24-CV-01013-CCT<br><br>**ORDER ON DEFENDANT'S MOTION TO AMEND ANSWER, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

The United States of America, as defendant, moves for leave to file an amended answer, Docket 50, and for summary judgment, Docket 53. Lucas Mack, the plaintiff, individually and on behalf of his wife's estate and his minor daughter, moves for partial summary judgment. Docket 57. The government resists Mack's summary judgment motion, Docket 71, and Mack resists the government's motions for leave to amend its answer and summary judgment, Dockets 66 and 70.

For the following reasons, the government's motion for leave to amend its answer is denied, the government's motion for summary judgment is denied in part and denied as moot in part, and Mack's motion for partial summary judgment is granted in part, denied in part, and denied as moot in part.

1

**BACKGROUND**

On August 19, 2023, United States Postal Employee Ignacio Galarza was traveling north on 458th Avenue (i.e., Whipple Road) in Roberts County, South Dakota, from the post office in the town of Summit to the post office in the town of Peever. Docket 72 ¶¶ 1–2; Docket 1 ¶ 7; Docket 56-7 at 2. At the same time, Heidi Mack and her daughter, A.M., were also traveling north on this same road. Docket 72 ¶ 3. Heidi drove a John Deere Gator side-by-side. *Id.*; Docket 66 at 2 (likening a Gator to other side-by-sides or all-terrain vehicles). Heidi was helping her husband Lucas Mack and others move cattle and pile hay and was driving to open a field gate. Docket 72 ¶ 4. Heidi turned onto Whipple Road heading north from her parents' house driveway. *See* Docket 56-7 at 3. The distance between the turn off for the field where the gate was and where Heidi entered Whipple Road was about 331 feet. *Id.* at 5. The field turn off was on the west side of Whipple Road. *Id.* Another route existed to reach this field which did not require entry onto the roadway, but it required opening another gate and electric fence, contained deep ruts, and passing through a field with cattle. Docket 67 ¶¶ 36–37.

As Heidi drove the Gator north on Whipple Road, Galarza approached her from the rear. Docket 72 ¶ 3; *see id.* ¶ 8. The speed limit for Whipple Road is 55 miles per hour, but Galarza was traveling at 65 miles per hour on cruise control. *Id.* ¶ 16; Docket 56-7 at 5. As Galarza converged on the Gator, he noticed Heidi's brake lights illuminate, so he decided to pass her. Docket 72 ¶ 14. Jean and June Backman (Heidi's mother and grandmother, Docket 67 ¶

18), who were sitting at the driveway waiting to follow Heidi, reported that Heidi activated her left turn signal more than 100 feet before the field approach turn, Docket 61; Docket 62; Docket 56-7 at 3; Docket 72 ¶¶ 10–11. A.M. also noticed that Heidi had activated the left turn signal but did not notice whether Heidi had turned her head or checked her rear-view mirror before turning. Docket 72 ¶ 12; Docket 56-3 at 5–6.

Galarza did not notice the left-turn blinker until he was already in the process of passing Heidi, and as she turned left, the two vehicles collided. Docket 72 ¶¶ 8–9, 15. Heidi and A.M. were pinned underneath the overturned Gator, and both were injured. Docket 67 ¶ 9. Heidi ultimately passed away as a result of her injuries. *Id.* ¶¶ 11–12.

The Gator contained a warning label that cautioned it was "[f]or off-road use only. Not intended for use on public roads or highways." *Id.* ¶ 30. However, Lucas Mack had licensed the Gator for operation on public roads under SDCL § 32-20-13. Docket 72 ¶ 37. To properly license the Gator, he equipped the Gator with "a rearview mirror, blinker kit, horn, and windshield." *Id.* ¶ 36.

Of relevance, Galarza passed a traffic sign that warned of farm equipment usage shortly before he reached the accident's location. *Id.* ¶ 17. Galarza was cited for careless driving, speeding, and not wearing a seatbelt, and he pled guilty to and was convicted of careless driving under SDCL § 32-24-8. *Id.* ¶¶ 18–19. As will be pertinent, the Court previously took judicial notice of Galarza's plea and conviction and granted summary judgment in Mack's favor on the issue that Galarza was acting within the scope of his

employment with the Postal Service at the time of the accident. *See* Docket 42 at 11–12.[1]

Lucas Mack brought this action individually, as personal representative of his wife Heidi's estate, and as the next friend of his daughter, A.M., on June 12, 2024, against the United States under the Federal Torts Claim Act, seeking damages for the wrongful death of Heidi, A.M.'s injuries, and property damage. Docket 42 at 3; *see generally* Docket 1. In its answer on September 15, 2024, the government asserted the affirmative defense of contributory negligence. *See generally* Docket 8.

As part of their discovery report, the parties agreed to submit all motions for leave to amend pleadings by November 22, 2024, but this provision of the parties' discovery report was not carried over in the Court's scheduling order. *See* Docket 10 ¶ 8; Docket 11. On March 31, 2025, and during discovery, Mack filed a Federal Rule of Civil Procedure 30(b)(6) notice to inquire about "the factual basis supporting the affirmative defenses included in the Answer," Docket 72 ¶ 25; in response, the government did not provide a witness as it claimed there was no factual information to provide, *id.* ¶ 26.

On April 16, 2025, the government sent a settlement communication that included a reference to an assumption of risk affirmative defense for the first time. *Id.* ¶ 27. Then, on July 7, 2025, Mack requested the government provide a supplement to discovery previously provided for a "factual basis

---

[1] The Court notes that it mistakenly cited SDCL § 32-2-8 as the statute Galarza was convicted under in its prior order. *See* Docket 42 at 12. The statute that should have been cited is SDCL § 32-24-8. *See id.* at 2, 3.

supporting its affirmative defenses." *Id.* ¶ 28. The government provided its supplement on July 25, 2025, and again mentioned its assertion of an assumption of risk defense. *Id.* ¶ 29. Discovery closed on August 1, 2025. Docket 11 ¶ 4. Mack filed a second Rule 30(b)(6) notice to depose a government witness on August 8, 2025, regarding "the factual basis supporting the . . . affirmative defenses included in the Answer" and "the factual information provided in the [government's] supplemental response to" its discovery. *Id.* ¶ 30; Docket 63-17 at 2. Later that day, the government sent an email advising that it again would not provide a Rule 30(b)(6) witness and only referenced contributory negligence when discussing affirmative defenses. Docket 72 ¶ 31.

Finally, on September 4, 2025, the day before motions other than motions in limine were due, *see* Docket 11 ¶ 9, the government moved for leave to amend its answer and add the affirmative defense of the assumption of risk. *See generally* Dockets 50 and 51. Shortly after filing its motion to amend, the government also filed a motion for summary judgment, in part based upon an assumption of risk defense. *See generally* Dockets 53–55.

## STANDARDS OF REVIEW

### I.   Motion for Leave to Amend Pleading

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course no later than: . . . 21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1)(B). If the time for amending as a matter of course has expired, a party "may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at (a)(2). Whether to

5

allow a party to amend a pleading is a matter of the court's discretion. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 714 (8th Cir. 2008).

Rule 15(a) holds that leave to amend is to be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman*, 532 F.3d at 715. "A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

## II.   Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate and may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue is "genuine" when the evidence produced "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is considered "material" if it "might affect the outcome of the suit under the governing law." *Id.* "Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Foster v. Ethicon, Inc.*, 529 F. Supp. 3d 992, 996 (D.S.D. 2021). "The moving party can meet this burden by

6

presenting evidence that there is no genuine dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof." *Finneman v. United States Dep't of Ag.*, No. 5:23-CV-05034-KES, 2024 WL 5158473, at *4 (D.S.D. Dec. 17, 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

If "the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by 'citing to particular parts of materials in the record' or 'by showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *Foster*, 529 F. Supp. 3d at 996 (alteration in original) (quoting Fed. R. Civ. P. 56(c)(1)). A court views the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Finneman*, 2024 WL 5158473, at *5; *Foster*, 529 F. Supp. 3d at 997; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

However, "[a] party opposing a properly supported motion for summary judgment 'may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor, without resort to speculation, conjecture, or fantasy.'" *Foster*, 529 F. Supp. 3d at 997 (quoting *Reed v. City of St. Charles*, 561 F.3d 788, 790–91 (8th Cir. 2009)); *see also Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. Cnty. of*

*Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). It is not the responsibility of a court on a summary judgment motion to determine the weight and credibility of the evidence but to determine whether a sufficient factual dispute exists so the issue may proceed to a jury. *Anderson*, 477 U.S. at 249–50.

A court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.,* 87 F.3d 256, 260 (8th Cir. 1996). But it may "consider any specific, non-conclusory facts alleged in [the verified complaint]." *Roberts v. United States*, No. 4:23-CV-04116-CCT, 2025 WL 789393, at *3 (D.S.D. Mar. 12, 2025) (citing *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)).

## DISCUSSION

### I.   Motion for Leave to Amend

The government seeks leave to amend its answer to add an assumption of risk defense. Docket 51. It claims that under Rule 15(a)(2), it should receive leave to amend because none of the reasons identified by the Eighth Circuit to deny its motion are applicable here. *Id.* at 2.

Mack opposes this motion because it comes "over a month after the close of discovery and over nine months after the parties' agreed-upon deadline to amend pleadings." Docket 70 at 1. The government replies that it was served Mack's complaint on June 17, 2024, the deadline for discovery was August 1, 2025, and the deadline for all motions, except motions in limine, was September 5, 2025. Docket 75 at 1.

Discovery closed on August 1, 2025. Docket 11 ¶ 4. While the discovery report indicated that the parties' deadline to file motions to amend the pleadings was November 22, 2024, this provision was not carried over in this Court's scheduling order, *see generally id.*, and no pleading amendment deadline was set as required under Rule 16. *See* Fed. R. Civ. P. 16(b)(3)(A). In the event no deadline to amend pleadings is set or provided in a scheduling order, like here, other courts have held that only Rule 15(a)(2) determines whether the court shall grant leave to amend, and the good cause standard of Rule 16 need not be met. *Hildreth v. Sheehan*, No. C23-4010-LTS, 2026 WL 607293, at *3 n.3 (N.D. Iowa Mar. 4, 2026) ("The scheduling order did not set a deadline to amend pleadings. Therefore, the standard set out in Rule 15(a) applies, rather than the 'good cause' standard of Rule 16(b), which applies when an amendment is sought after a scheduling order deadline." (citing *Sherman*, 532 F.3d at 715)); *Savage v. Tweedy*, No. 3:12-cv-1317-HZ, slip op. at 5–6 (D. Or. Mar. 19, 2013), https://perma.cc/FV25-ZYWT.

Under the Rule 15(a)(2) factors, Mack argues that most of the recognized reasons to deny leave to amend apply here: "undue delay, bad faith, dilatory motives, undue prejudice to Mack, and futility of the amendment." Docket 70 at 1–2.

### A. Undue Delay

Mack first asserts the government acted with undue delay in seeking its motion for leave to amend. *Id.* at 5. He argues that because the government began its investigation on the day the crash occurred, it was aware of the

accident's circumstances and all the facts that would support an assumption of risk defense. *Id.* at 2, 5. The accident occurred more than two years before the government filed its motion for leave to amend. *Id.* at 5. Mack claims the first time the government mentioned an assumption of risk argument was in the April 16, 2025 settlement letter and again in its supplement to its interrogatory response on July 25, but still, it did not move to amend until September 4 of that year. *Id.* at 3.

The government replies that its motion for leave to amend was not unduly delayed. Docket 75 at 2–3. It claims that it is an unreasonable expectation to conclude that it had "complete knowledge" of all the facts of the accident as of the date it occurred just because a Postal Service supervisor came and photographed the scene. *Id.* at 2. The government also claims that it "only recently became aware of the opportunity to seek the affirmative defense of assumption of risk" through discovery. *Id.* at 5.

Yet, the government referenced assumption of risk in a settlement communication to Mack four and a half months before its amendment motion and in an interrogatory response about five weeks before its amendment motion. Its motion also comes about a month after the close of discovery. *See* Docket 11 ¶ 4. Furthermore, after the government included assumption of risk in its supplemental interrogatory response on July 25, 2025, Mack filed a second Rule 30(b)(6) notice, partially regarding "the factual basis supporting the . . . affirmative defenses included in the [a]nswer," specifically the "factual information" regarding its interrogatory response supplement that included

10

assumption of risk. Docket 70 at 4. But on August 8, 2025, the government again refused to provide a Rule 30(b)(6) witness and only referred to contributory negligence as an asserted affirmative defense. *Id.*

The government does not explain its delay in moving to amend or its inconsistent assertions of affirmative defenses beyond asserting that, "[t]hrough the discovery process, [it] became aware of the opportunity to assert the assumption of [] risk affirmative defense." Docket 51 at 3.

As Mack alludes to, *see* Docket 70 at 7, permitting amendment here would likely result in more than minimal additional discovery to learn more details of this asserted defense. *See Perkins v. Spivey*, 911 F.2d 22, 34–35 (8th Cir. 1990) (holding there was no abuse of discretion by the district court in it finding that "it would be 'contrary to the overall purposes of the federal rules to promote efficiency and cost saving in litigation to permit amendments that appear to run a very real risk of extensive additional discovery'"); *Thompson-El v. Jones*, 876 F.2d 66, 68 (8th Cir. 1989) (noting, as justification not to grant motion to amend, "grant of the motion most likely would have necessitated additional discovery and further delay"). The government's new defense puts forth a new theory that Mack has not prepared to confront in prosecuting his case and has been unable to conduct discovery on due to the government's refusal to provide a factual basis for this affirmative defense, although this defense does not incorporate any new facts or a separate incident. Docket 70 at 4, 6, 7 (noting the government's unwillingness to provide a Rule 30(b)(6) deposition witness and provide a factual basis for its affirmative defenses); *see*

11

*Hildreth*, 2026 WL 607293, at *4 ("When amendments add new theories, the Eighth Circuit has frequently determined that district courts did not abuse their discretion in refusing amendment." (first citing *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); then citing *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004))); *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend.").

The government unduly delayed in seeking to amend its answer a month past the discovery deadline and only in immediate conjunction with its motion for summary judgment, which is partially premised on the assumption of risk grounds it seeks to append to its answer. *See* Dockets 50 and 53 (both filed on September 4, 2025). Undue delay appears here given the government's mention of assumption of risk in interparty communications months before its motion to amend. Undue delay is reason enough to deny the government's motion to amend, but there are additional reasons.

### B. Bad Faith & Dilatory Motive

Mack also declares the government acted in bad faith and with a dilatory motive. Docket 70 at 6. He mentions his Rule 30(b)(6) notices where he sought "to ask about, among other things, 'the factual basis supporting the . . . affirmative defenses included in the [a]nswer.'" Docket 70 at 3. He asserts bad faith and dilatory motive because the government "refused to provide a witness or schedule the deposition," and refused his second Rule 30(b)(6) notice after

12

again mentioning assumption of risk in its supplemental response to Mack's interrogatories on July 25, 2025, a week before the close of discovery. *Id.* at 3–4, 6. He continues that by the government also refusing to answer his interrogatory requesting the factual basis for its affirmative defenses until a week before the close of discovery, the government acted in bad faith and dilatorily. *Id.* at 6.

The government replies that it has not acted in bad faith or with a dilatory motive. Docket 75 at 3. It explains that it did not produce a Rule 30(b)(6) witness because it "had no factual information to provide" and did not do so in bad faith or to act dilatory. *Id.* It also claims that "[t]he affirmative defenses of contributory negligence and assumption of the risk are heavily dependent on information supplied by [Mack] or other witnesses," and therefore, the facts relevant to these defenses have "already been discovered through depositions, including the deposition of" Mack himself. *Id.* at 3–4. It appears that Mack's deposition occurred on August 12, 2025—past the discovery deadline by about two weeks. Docket 51 at 3.

Mack does not provide evidence to support an inference that the government filed this motion in bad faith. However, a dilatory motive may be inferred from the current record. In April and July of 2025, the government referenced assumption of risk in a settlement communication and supplement to discovery. Mack's efforts in July and August of 2025 to follow up and determine the factual basis for the government's affirmative defenses were

13

unsuccessful. The government did not formally seek to add its assumption of risk defense until a month after discovery closed.

The government claims that it was only "through the discovery process" that it "became aware of the opportunity to assert" this defense and thus prompted it to file this motion, Docket 51 at 3. But if that is true, then the government became aware of the assumption of risk defense months before discovery closed, as evidenced by the government's allusions to an assumption of risk defense in communications with Mack in the months prior. Likewise, the motion to amend came over a month after discovery closed and after the government's refusal to provide a witness per Mack's Rule 30(b)(6) notices and delay in answering Mack's interrogatory about its affirmative defense bases.

## C. Undue prejudice

Mack additionally contends that undue prejudice will befall him if the government amends its answer. Docket 70 at 7. He explains that he "has not been permitted to conduct any meaningful discovery on the issue of assumption of the risk or prepare for the same" due to discovery closing on August 1, 2025, and the government's "refusal to provide the factual basis for its affirmative defenses." *Id.* At this stage of litigation, Mack believes he would be unduly prejudiced by allowing the government to now assert an assumption of risk defense that he has not prepared to combat. *Id.* at 8. The government retorts that because trial has not yet been set and the deadline for all motions (minus those in limine) had recently passed at the time of its reply brief, there is no undue prejudice to Mack. Docket 75 at 4.

14

"Delay alone is insufficient justification" to deny a motion to amend; "prejudice to the nonmovant must also be shown." *Bell*, 160 F.3d at 454. An appellate court reviews a district court's ruling on a motion to amend under an abuse of discretion standard, and "[c]ases in which an abuse of discretion has been found generally involve amendments based on facts similar to the original complaint." *Id.* "On the other hand, when late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved." *Id.* "Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." *Id.*

In *Bell,* the Court of Appeals found the district court was within its proper discretion to deny the plaintiff's motion to amend because the amendment would "require additional discovery by the parties" and "an extension of the already expired deadline for motions." *Id.* It held that the amendments raised "different factual and legal issues than the allegations in the original complaint." *Id.* The court affirmed the district court's ruling that the motion be denied due to undue delay and prejudice to the nonmovants "in having to reopen discovery on new substantive claims so close to the trial date, and because the only reason for the untimeliness of the motion was [the movant's] lack of due diligence." *Id.* at 454–55. While a trial date had been set and was five weeks away at the time the motion was filed, *id.* at 454, this is not a prerequisite for finding undue prejudice.

15

In this Court's view, Mack will suffer undue prejudice if this amendment is allowed because discovery has already closed, and Mack has prepared his case and conducted discovery without this affirmative defense having been brought. The government is correct that a trial date has not yet been set as had been done in the cases cited by Mack, and this new defensive claim arises from the same factual circumstances at issue in its original answer as opposed to introducing wholly new circumstances. However, it is particularly unfairly prejudicial to Mack that this amendment seeks to add a claim that is directly associated with the government delaying disclosure of a basis for an assumption of risk defense, and its refusals to produce a Rule 30(b)(6) witness for its affirmative defenses generally. Here, there is more than mere delay in the government filing its motion to amend.

The prejudice to the government in denying its motion does not outweigh that to Mack, as the government had already asserted an affirmative defense, that of contributory negligence. Also, denying this motion does not dispositively resolve this case, and the government is free to advance its defense as indicated in its answer. Undue prejudice thus provides another ground to deny the government's leave to amend.

Mack's futility argument, Docket 70 at 8–9, need not be examined, as this Court has already found that the above reasons sufficiently justify denial of the government's motion for leave to amend.

The record before the Court does not demonstrate a showing that justice requires permitting the government to amend its answer. For the reasons of

16

undue delay, dilatory motive, and undue prejudice to Mack, the government's motion for leave to amend is denied and it may not assert the affirmative defense of assumption of risk.

## II.    Government's Summary Judgment Motion

The government moves for summary judgment on the issues of Heidi's contributory negligence and her assumption of risk.[2] Dockets 53 and 54. While the government titled its motion as a full summary judgment motion, Docket 53, it is actually a partial summary judgment motion because it seeks resolution only on Mack's first claim, wrongful death due to Galarza's negligence, *see* Docket 54 at 1; Docket 1 at 4.

The government argues that Heidi's conduct leading up to the accident establishes that she was negligent and her negligence was more than slight compared to Galarza's negligence, which under South Dakota law, bars Mack's recovery and warrants summary judgment on his wrongful death claim. Docket 54 at 4.

Contributory negligence is codified in South Dakota as follows:

In all actions brought to recover damages for injuries to a person or to that person's property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

---

[2] As the government notes, "[g]enerally, a failure to plead an affirmative defense results in a waiver of that defense." Docket 51 at 1 (quoting *First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007)). By denying the government's motion for leave to amend its complaint to include the affirmative defense of assumption of risk, that defense is not pled and hence waived. Due to its waiver, the government's argument for summary judgment based upon an assumption of risk argument is moot.

SDCL § 20-9-2.

"Contributory negligence is a 'breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.'" *Johnson v. Armfield*, 672 N.W.2d 478, 481 (S.D. 2003) (quoting *Starnes v. Stofferahn*, 160 N.W.2d 421, 426 (1968)); *see Steffen v. Schwan's Sales Enters.*, 713 N.W.2d 614, 619 (S.D. 2006) ("Contributory negligence is negligence on the part of a plaintiff which, when combined with the negligence of a defendant, contributes as a legal cause in the bringing about of the injury to the plaintiff." (quoting S.D. Pattern Jury Instruction 11-01)).

"If the record contains evidence to support the issues, questions of negligence and contributory negligence are for the jury in all but the rarest of cases." *Rodriguez v. Vaniperen*, 736 F. Supp. 3d 699, 712 (D.S.D. 2024) (citing *Jensen v. Menard*, 907 N.W.2d 816, 820 (S.D. 2018)); *see Rowland v. Log Cabin*, 658 N.W.2d 76, 80 (S.D. 2003) (explaining contributory negligence is for the jury to decide "in all but the rarest of cases so long as there is evidence to support the issues" and "only when reasonable men can draw but one conclusion from facts and inferences [does it] become a matter of law and this rarely occurs" (quoting *Pettry v. Rapid City Area Sch. Dist.*, 630 N.W.2d 705, 708 (S.D. 2001)); *Carpenter v. City of Belle Fourche*, 609 N.W.2d 751, 760 (S.D. 2000) ("If under all of the evidence, both parties could be found to be negligent, the comparative negligence of the parties is a question of fact which is within

18

the province of the jury." (quoting *Estate of He Crow v. Jensen*, 494 N.W.2d 186, 190 (S.D. 1992))).

"Under South Dakota law, 'the fact that the plaintiff in a negligence case may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant.'" *Lindholm v. BMW of N. Am., LLC*, 862 F.3d 648, 653 (8th Cir. 2017) (citation modified) (quoting SDCL § 20-9-2). "But when facts show beyond dispute that the plaintiff's negligence is more than slight, then it is appropriate to hold as a matter of law for a negligent defendant." *Id.*; *Rodriguez*, 736 F. Supp. 3d at 712 (noting contributory negligence under South Dakota law is a "two-step inquiry," first deciding whether a plaintiff was negligent and then, if so, deciding whether the plaintiff's negligence was more than slight compared to the defendant's alleged negligence). "'Slight' in this context means 'small of its kind or in amount; scanty; meager.'" *Lindholm*, 862 F.3d at 653 (quoting *Wood v. City of Crooks*, 559 N.W.2d 558, 560 (S.D. 1997)); *see Norwest Cap. Mgmt. & Tr. Co. v. United States*, 828 F.2d 1330, 1335 (8th Cir. 1987) (holding slightness depends upon factual circumstances but "slight negligence" means "small in quantum in comparison with the negligence of the defendant" (citation modified) (quoting *Crabb v. Wade*, 167 N.W.2d 546, 549 (S.D. 1969))).

The Eighth Circuit previously held that three factors may aid in determining "the extent of a plaintiff's negligence" under South Dakota law, those being: "the precautions he took for his own safety; the extent to which he

19

should have comprehended the risk as a result of warnings, experience, or other factors; and the foreseeability of injury as a consequence of his conduct." *Norwest Cap. Mgmt.*, 828 F.2d at 1335 (quoting *Associated Eng'rs, Inc. v. Job*, 370 F.2d 633, 641 (8th Cir. 1966)).

The government claims under the first factor, taking precautions for her own safety, that Heidi "failed to look to her left or behind her before turning into the passing lane." Docket 54 at 4. It continues that Heidi was driving the Gator without side mirrors on and that its loud engine prevented her from hearing a vehicle approaching her. *Id.* at 4–5. It also asserts that Heidi should have used the alternative route through a cow yard to reach the field she was driving towards without entering the highway. *Id.* at 5.

However, Mack contends that the record does not contain evidence that Heidi failed to look, and the government has not presented evidence to the contrary. *See* Docket 67 ¶ 32 (citing Docket 56-3 at 6); Docket 66 at 7–10; *see also* Docket 56-1 at 8–9 (Galarza denying he saw Heidi turn to look or not and stating he thought it looked as though she would continue driving straight). The cited portions of the record indicate that it is unknown whether Heidi failed to look. Thus, the record, in the light most favorable to Mack, does not support that Heidi failed to look before turning.

The government's argument that the lack of side mirrors and loud engine indicate a lack of precaution is also unpersuasive. SDCL § 32-20-13, the statute permitting side-by-side type vehicles to be licensed for use on public roads, does not require side mirrors or a quiet engine, and neither party

20

contends that it does. *See* SDCL § 32-20-13 ("Any all-terrain vehicle with four or more wheels . . . may be licensed as a motorcycle pursuant to chapter 32-5 to be used on a public highway."); Docket 67 ¶ 34. The state legislature has spoken and provided a process for vehicles like a Gator to drive on public roads without requiring side mirrors and a quiet engine, and Mack's Gator was so licensed. Docket 67 ¶ 30. Thus, it can not be said that these facts establish as a matter of law that Heidi's actions fell below her legal duty standard under this statute, let alone being more than slightly negligent when compared to Galarza's actions given Heidi's satisfaction of SDCL § 32-26-22's requirements.

The government's next assertion that Heidi failed to act with precaution when she chose to drive on a public road instead of through a cow yard additionally fails for the same reason. It is for a trier of fact to decide whether Heidi was negligent and, if so, more than slightly negligent compared to Galarza by lawfully driving the Gator on a public road when there was an alternative route, Docket 67 ¶ 36. *See* Docket 56-7 at 2 (Trooper Juan Flores's report stating the Gator was licensed); *cf. Carpenter*, 609 N.W.2d at 759 ("[T]he mere fact that an accident happened creates no inference that it was caused by someone's negligence.").

The government infers that Heidi lacked precaution and acted negligently by not strapping her seatbelt, Docket 54 at 6, but as Mack identifies, Docket 66 at 16–17, South Dakota law contradicts this position. SDCL § 32-38-4 states that failure to comply with the seat belt requirement under SDCL

21

chapter 32-38 "does not constitute contributory negligence, comparative negligence or assumption of the risk." SDCL § 32-38-4.

The government continues, regarding the second and third factors, that Heidi should have comprehended the risks and foreseeability of injury from using the Gator on the road because Heidi most likely saw a warning on the Gator that cautioned against usage on public roads. Docket 74 at 4–5; Docket 55 ¶ 30. But the government appears to argue that Heidi should have foreseen and comprehended the risk of another motorist acting as Galarza did, traveling at ten miles per hour over the speed limit and then attempting to pass, not noticing her turn signal, and not responding to her brake lights other than deciding to pass. True that these risks were present—as they always are for motorists traveling on a shared road—but this logic ignores Heidi's legal right under South Dakota law to operate this Gator on a public road.

Moreover, denying summary judgment here is consistent with the South Dakota Supreme Court's ruling in a previous case. The facts in *Hoffman v. Royer* are similar to this accident. 359 N.W.2d 387 (S.D. 1984). There, a driver turned left after activating his turn signal and peered through his rear-view mirror for any following traffic. *Id.* at 390. Unfortunately, he did not see another driver approaching behind him because there was another vehicle in between them, and when the approaching driver attempted to pass, he struck the turning car. *Id.* at 388. The court held that it was a jury question whether a driver turning left with his turn signal activated was negligent as another driver attempted to pass. *Id.* at 390.

22

The record does not reveal exactly what Heidi did before turning left. A.M. is the witness who was in the best position to know these facts, and she has indicated that she does not know or recall them.  The other witnesses do not know these facts either. From the record, it appears that Heidi illuminated her turn signal, braked, and was legally driving on a public road when the accident occurred. These facts create a material issue of fact in dispute on the government's claim that Heidi acted negligently. Likewise, there are facts in dispute on the government claim that Heidi failed to look in her rear-view mirror or otherwise turn around to look. *See* Docket 54 at 4. *See Anderson*, 477 U.S. at 248 ("Summary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (citation modified)). Therefore, the government has failed to carry its burden showing that there is no genuine dispute of material fact.

### III.  Mack's Partial Summary Judgment Motion

Mack also filed a partial summary judgment motion. Dockets 57–59 and 78. He seeks summary judgment in his favor on his claims that (1) "Galarza was negligent in the operation of his vehicle at the relevant time," and (2) the government's "affirmative defense of contributory negligence fails as a matter of law."[3] Docket 57 at 1. The government opposes Mack's motion. Dockets 71 and 72.

---

[3] Mack raised a third issue for summary judgment, that being the government's assumption of risk affirmative defense. That argument is deemed moot because this Court denied the government's motion to amend above. Therefore, Mack's partial summary judgment motion regarding this defense is denied as moot.

### A. Galarza's Negligence

Mack first contends that summary judgment is appropriate regarding Galarza's negligence. Docket 58 at 8; Docket 78 at 6. Mack argues that Galarza's legal duty and breach of that duty are established as negligence per se under SDCL § 32-24-8 because the following facts are undisputed: Galarza was speeding ten miles per hour above the posted speed limit and on cruise control, Docket 72 ¶ 16; he passed a farm equipment warning sign, *id.* ¶ 17; he saw Heidi's brake lights illuminate and did not notice her left turn signal until near her vehicle and as he was passing, *id.* ¶¶ 14–15 (citing Docket 63-2 at 2); and he pled guilty to and was convicted of careless driving for this incident under SDCL § 32-24-8, *id.* ¶ 19. Galarza's guilty plea and conviction have been judicially noticed. Docket 42 at 12.

"Where the defendant admits a violation of a safety statute, negligence per se is established . . . ." *Baddou v. Hall*, 756 N.W.2d 554, 561 (S.D. 2008). "The statute or ordinance becomes the standard of care of the ordinarily careful and prudent person." *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 15 (S.D. 1988). It appears that the South Dakota Supreme Court views a "safety statute" as one "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred." *Id.* (quoting *Lovell v. Oahe Elec. Coop.*, 382 N.W.2d 396, 397–98 (S.D. 1986)); *see Davies v. GPHC, LLC*, 980 N.W.2d 251, 263 (S.D. 2022) ("[Negligence per se suffices] to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other

24

elements of negligence concur." (quoting *Hendrix v. Schulte*, 736 N.W.2d 845, 849 (S.D. 2007))). If this type of statute is violated without explanation or excuse "and the plaintiff can establish his relationship to the statute," that violation "renders the defendant negligent as a matter of law." *Stevens*, 426 N.W.3d at 15 (emphasis omitted) (quoting *Lovell*, 382 N.W.2d at 398); *Thompson v. Summers*, 567 N.W.2d 387, 393 (S.D. 1997).

The government attempts to suggest that South Dakota precedent does not support Mack's contention that it is negligence per se that Galarza pled guilty to and was convicted of careless driving. Docket 71 at 2–3. It quotes language from *Baddou*, 756 N.W.2d at 559, which in turn quotes *Dartt v. Berghorst*, 484 N.W.2d 891, 894 n.3 (S.D. 1992), that "[p]leading guilty to such a [statutory] violation does not conclusively establish the violation, but constitutes an admission against interest." However, *Baddou* also states the general rule that a "violation of a safety statute is negligence as a matter of law unless it is legally excused." 756 N.W.2d at 559 (quoting *Dartt*, 484 N.W.2d at 895). "Under such circumstances a judge would direct a verdict for the injured plaintiff, unless legal excuse was shown." *Id.*

The government mischaracterizes the context of this quote. The court in *Baddou* distinguished *Dartt* where there the offending driver had pled guilty to a statutory violation and the court found there was no legal excuse for the defendant's negligence. *Id.*; *Dartt*, 484 N.W.2d at 895–96, 898 ("[The defendant's] statutory violations were clearly established and are not in dispute."). Contrarily, the offending driver in *Baddou* did not plead guilty or

25

admit to violating the statute in question, and she had a possible legal excuse. 756 N.W.2d at 559–60 (noting defendant argued she "prudently glanced to the left" to ensure she did not hit children who were standing on a sidewalk as if about to enter the road).

The court in *Baddou* made the same contrast with another case, *McDonnel v. Lakings*, 99 N.W.2d 799 (S.D. 1980), where the civil defendant readily admitted to the violative conduct, and "[i]t was beyond contention that the defendant had violated the safety statute which commanded that a motor vehicle 'not follow another vehicle more closely than is reasonable and prudent, having due regard . . .' for traffic." 756 N.W.2d at 560 (quoting SDCL § 32-26-40). In both *Dartt* and *McDonnel*, the court found the civil defendants negligent per se (i.e., negligent as a matter of law) as they both admitted their conduct violated the respective statutes in question, and the defendant in *Dartt* pled guilty to said violation. *Id.* at 559–60. The court did not find the defendant in *Baddou* negligent per se because she neither admitted nor pled to violating a statute and there were facts that may have legally excused her actions. *Id.*

Thus, under South Dakota law, a violation of a safety statute, unless legally excused, is negligence per se. Applying that law here, the government does not argue that Galarza's conduct was legally excused under any of the four recognized excuses:

> (1) Anything that would make compliance with the statute impossible;
> (2) Anything over which the driver has no control which places his car in a position violative of the statute;

26

(3) An emergency not of the driver's own making by reason of which he fails to observe the statute; [or]
(4) An excuse specifically provided by statute.

*Dartt*, 484 N.W.2d at 896 (quoting *Engel v. Stock*, 225 N.W.2d 872, 873 (S.D. 1975)); *Rodriguez*, 736 F. Supp. 3d at 718; *Vore v. Osborn*, No. 13-5075-JLV, 2015 WL 5430359, at *5 (D.S.D. Sep. 14, 2015).

The Court already judicially noticed that Galarza pled to and was convicted of careless driving under SDCL § 32-24-8. As such, there is no genuine dispute as to any material fact regarding Galarza's conviction under this statute. Further, this statute is a safety statute because it was drafted to protect motorists on the road from other drivers who might be overdriving the conditions whether by speeding or acting carelessly and establishes a standard of conduct for motorists. *See* SDCL § 32-24-8 ("Any person who drives any vehicle upon a highway . . . carelessly and without due caution, at a speed or in a manner so as to endanger any person or property, not amounting to reckless driving . . . is guilty of careless driving."). This would include a motorist in Heidi's position who shared the road with Galarza. The government puts forth no argument that explains or excuses Galarza's violation of this statute under which he was convicted of careless driving and therefore has failed to identify any genuine dispute of material fact as to Galarza's violation of this statute.

As such, Mack has established that Galarza was negligent per se under the circumstances and breached his legal duty to Heidi. The negligence elements of causation and damages remain for trial.[4]

## B. Contributory Negligence

Mack next argues for summary judgment on the government's contributory negligence affirmative defense. Docket 58 at 9; Docket 78 at 7. He argues that because there is a presumption under South Dakota law that Heidi, as the decedent, exercised due care in her operation of the vehicle and because there is no evidence that Heidi acted negligently, summary judgment in his favor is warranted. Docket 58 at 9.

A presumption of due care premised upon "the natural instinct of self-preservation" exists, "in the absence of evidence to the contrary, that a person killed in an auto accident was exercising due care for his protection at, and immediately before, the accident." *Theunissen v. Brisky,* 438 N.W.2d 221, 224 (S.D. 1989). However, this presumption may be overcome by "direct or circumstantial evidence to the contrary." *Id.* An issue of fact to be decided by the trier of fact is created when such evidence is introduced. *See id.* Here, the record shows that Heidi braked and turned on her left turn signal. Docket 72 ¶¶ 7, 11–12, 14–15. Then she turned in front of Galarza's vehicle. *Id.* ¶ 9; Docket 78 at 4 n.1 (citing Docket 63-2 at 1–2). The Court cannot reasonably

---

[4] The government claims that a document Mack cites to in his argument is protected by the attorney work product privilege. Docket 71 at 4. The government inadvertently produced it during discovery and then notified Mack of its intention to not waive the privilege for a portion of that document. *Id.* The Court's decision here is made without reliance upon the document the government claims is protected from discovery through the attorney work product privilege.

infer from this record that Heidi looked to see if she could safely turn, regardless of the high speed at which Galarza was driving or his rapidity in deciding to pass. *See* Docket 78 at 5; *see also* Docket 72 ¶ 16 (Galarza was traveling at 65 miles per hour); Docket 67 at 8 (equating 65 miles per hour to 95.33 feet per second); Docket 68-2 at 2 (Galarza testifying he began to pass about five car-lengths behind Heidi); Docket 67 at 8 (finding the vehicle Galarza drove was 187.8 inches and he began to pass about 939 inches, or 78.25 feet, behind Heidi).

Mack cites *Steffen* to support his proposition that "if a plaintiff motorist is operating a vehicle precisely as the law requires at the time of an accident, contributory negligence does not exist as a matter of law." Docket 78 at 8. In *Steffen*, a jury had found the plaintiff slightly contributorily negligent. 713 N.W.2d at 616. The plaintiff appealed, arguing that it was error of the court to instruct the jury on the issue of contributory negligence. *Id.* at 617. Both the plaintiff and the offending driver were driving the same direction when the plaintiff stopped and the driver either slowed down or stopped for an emergency vehicle that came from the other direction. *Id.* at 616, 618. The plaintiff remained stopped after the emergency vehicle passed and the defendant's driver rear-ended her. *Id.* at 618. Even though the plaintiff saw the defendant's vehicle approaching in her rearview mirror, there were two vehicles in front of her, and she could not move her car anywhere out of the way. *Id.* The court held that the defendant's proof of contributory negligence was

29

insufficient to meet his burden to warrant a contributory negligence instruction. *Id.* at 620.

But the facts between this case and *Steffen* are distinguishable. There, the issue was whether a contributory negligence instruction should have been given, instead of summary judgment as requested here. More importantly, the *Steffen* plaintiff did not take action to alter her conduct at the time of the accident, whereas the record shows Heidi turned left as Galarza attempted to pass.

In sum, a determination as a matter of law that Heidi was not contributorily negligent upon this record would be speculative. *Cf. Foster*, 529 F. Supp. 3d at 997 (noting allegations opposing summary judgment must be substantiated "without resort to speculation, conjecture, or fantasy"). It would also be speculative to find Heidi contributorily negligent, as the government wishes, for the same reason of evidentiary conjecture. Therefore, Mack has not met his burden to show there is no genuine issue of material fact as to whether Heidi acted contributorily negligent or not, and this issue remains for trial.

## ORDER

Accordingly, it is hereby

ORDERED that the government's motion for leave to amend its answer, Docket 50, is denied. It is further

ORDERED that the government's motion for summary judgment, Docket 53, is denied in part and denied as moot in part. It is further

ORDERED that Mack's motion for partial summary judgment, Docket 57, is granted in part, denied in part, and denied as moot in part.

Dated July 16, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

31